IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

JURY TRIAL DEMANDED

CHRISTOPHER CZARNOCKI,

Plaintiff,

v.

GREYSTAR MANAGEMENT SERVICES, L.P.
d/b/a GREYSTAR and FELICE KLINE, an individual

Defendants.
_______________________________________________/

# COMPLAINT

**COMES NOW**, Plaintiff, Christopher Czarnocki (hereinafter "Plaintiff"), by and through his undersigned attorney, and sues the Defendants, Greystar Management Services, L.P. d/b/a Greystar (hereinafter "Defendant") and Felice Kline (hereinafter "Ms. Kline") and states as follows:

## NATURE OF THIS ACTION

1. Plaintiff was an employee of the Defendant, and brings this action for national origin, disability, and gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1994, as amended, ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, and for overtime compensation and retaliation under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq.* ("FLSA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. 1331, 1337 and 29 U.S.C. 216(b) because the action arises under the laws of the United States and the Actions of Congress regulating commerce.

3. At all times pertinent to this Complaint, Defendant was an enterprise engaged in interstate commerce as defined under the FLSA. Additionally, Plaintiff was individually engaged in commerce.

4. Defendant's wrongful conduct and the events giving rise to the claims alleged herein, including the uncompensated work performed by the Plaintiff for the benefit of Defendant, took place in Palm Beach County, State of Florida.

## PARTIES

5. Plaintiff, Mr. Czarnocki, is a citizen of the United States and a resident of Boca Raton, Florida.

6. Upon information and belief, at all times relevant to this action, Defendant, Greystar Management Services, L.P. d/b/a Greystar is a corporation that operates a full service property management business, with its East Region main office located at 4030 Boy Scout Suite 800 Tampa, Florida 33607, and may be served by serving their attorney Juan C. Lopez-Campillo, Jackson Lewis, 390 N. Orange Ave. Suite 1258 Orlando, FL 32801. The Defendant is an employer that, upon information and belief, at all times relevant to this action, was doing

business in the State of Florida and is subject to suit pursuant to the FLSA as an enterprise engaged in commerce for the purposes of the FLSA.

7. Plaintiff also alleges that Defendant, Ms. Kline, is and at all times material hereto was, an individual, resident of the State of Florida, who manages and supervises the employees for Defendant at 6503 North Military Trail Boca Raton, Florida 33496 and who regularly exercised the authority to hire, discipline, and fire employees, determine the work schedules of employees, among others. By virtue of such control and authority, Defendant, Ms. Kline, is an employer as such term is defined by the FLSA, 29 U.S.C. § 201 et seq.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

8. On or about October 11, 2012, Plaintiff filed timely charges of discrimination, harassment and retaliation with the Office of Equal Opportunity (hereinafter "OEO"), a copy of which is attached hereto as Exhibit "A." On or about April 1, 2014, counsel for Plaintiff formally requested a Notice of Right to Sue from the OEO since more than six (6) months had passed since the filing of the charges. The "Notice of Dismissal" from the OEO was received by Plaintiff's counsel on April 9, 2014, a copy of which is attached hereto as Exhibit "B." Therefore, Plaintiff has exhausted all his administrative remedies.

## FIRST CAUSE OF ACTION

### Overtime Pay

**(Violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201 *et seq.*)**

9. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 6 of this Complaint.

10. At all times relevant to this action, Plaintiff was engaged in commerce and was employed by Defendant within the meaning of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201 *et seq.* ("FLSA"), and is entitled to the rights, protections, and benefits provided under said law.

11. Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA. Defendant violated 29 U.S.C. 207(a)(1) (2004) by failing to pay Plaintiff overtime compensation for the work he performed in excess of forty (40) hours each week.

12. From February, 2011 through August, 2012, Plaintiff worked as an "Assistant Supervisor of Maintenance" for one of Defendant's properties in Boca Raton, Florida.

13. Defendant classified Plaintiff's position as a non-exempt employee.

14. Plaintiff's duties did not meet the requirements of exempt employee status under the FLSA. At no time was Plaintiff employed as an officer, executive or director for the Defendant, nor did his primary duties include management of the business or exercise of discretion and independent judgment on matters of significance.

15. Plaintiff's primary duties which take up most of his time included, but are not limited to, routine upkeep on the property by performing maintenance-related tasks and preparation of vacant apartment homes for leasing.

16. Throughout Plaintiff's employment with the Defendant, Plaintiff was engaged in interstate commerce and handled goods that had been produced for and transported in commerce.

Therefore, Defendant is an "employer" and Plaintiff is an "employee" within the meaning of the FLSA.

17. Plaintiff's hourly rate between 2011-2012 was $16.00.

18. As part of Plaintiff's compensation, Defendant provided Plaintiff with a rent free apartment within the property, Mizner Court, so that Plaintiff could also be available to take care of property and tenant's maintenance issues during non-business hours.

19. Plaintiff worked an average of sixty (60) hours a week on the property.

20. Plaintiff usually "clocked-in" and "clocked-out" during his regular working hours. However, it was Defendant's practice not to have Plaintiff clocked-in and clocked-out during non-business hours when the management office was not open.

21. Plaintiff was usually "on-call" during none-business hours when the management office was not open. He usually worked between 10-20 overtime hours a week on the property performing maintenance-related tasks for the tenants during non-business hours.

22. Throughout Plaintiff's employment, Defendant failed to pay him the overtime compensation which is owed to him for most of the hours of work performed in excess of forty (40) hours each week.

23. Defendant did not reasonably believe that their actions or omissions were not in violation of the FLSA.

24. By the actions alleged herein, Defendant willfully, knowingly, and/or recklessly failed to satisfy the requirements for the payment of all wages for labor and services rendered, in particular the overtime wages for the hours Plaintiff worked in excess of 40 hours per week, even

though Plaintiff sent the Defendant a pre-suit demand letter before filing the captioned Complaint.

25. Because of the unlawful acts of the Defendant, Plaintiff is entitled to the unpaid overtime compensation owed to him, in an amount to be determined at trial, plus an additional equal amount as liquidated damages, prejudgment interest, attorney's fees, costs, and any other relief the court deems fit.

SECOND CAUDE OF ACTION

Retaliation

**(Violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201 *et seq.*)**

26. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 7 and 10-23 of this Complaint.

27. Plaintiff maintains that he complained several times with management, in particular to the respective property manager at the time, Ms. Felice Kline (hereinafter "Ms. Kline"), about the irregularities with his paychecks, including, but not limited to the following: nonpayment of overtime and regular hours.

28. Defendant's property manager, Ms. Kline, retaliated against Plaintiff for complaining about the above discussed irregularities with his paycheck by harassing him, threatening him, unfairly disciplining him, and finally terminating his employment.

29. Plaintiff has also been retaliated by the Defendant after his termination from employment by the Defendant prohibiting and threatening company employees from communicating with Plaintiff, providing negative job references, among other adverse actions.

30. The FLSA prohibits retaliation by an employer against an employee, including former employees, for asserting rights under the FLSA in violation of Section 15(a)(3).

31. As a result of the unlawful acts of the Defendant, Plaintiff is entitled to lost wages and liquidated damages equal to the lost wages, reinstatement or front pay, compensatory damages, reasonable attorney's fees, costs, and pre-judgment interest, and any other relief the court deems fit.

THIRD CAUSE OF ACTION

National Origin Harassment

**(Violation of Title VII of the Civil Rights Act of 1994, as amended, 42 U.S.C. §2000e)**

32. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 8 of this Complaint.

33. At all times material hereto, Defendant is a covered employer under Title VII.

34. At all times material hereto, Plaintiff was a covered employee of Defendant under Title VII.

35. At all times material hereto, Ms. Felice Kline (white), Property Manager, was acting within the course and scope of her employment with Defendant.

36. Plaintiff was employed by the Defendant as a Maintenance employee on or about September, 2010. Plaintiff was later promoted to Assistant Maintenance Supervisor on or about February, 2011.

37. At all relevant times, Plaintiff fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant.

38. Defendant violated Title VII by discriminating against Plaintiff by making racial and national origin slurs on a daily/weekly basis against the Hispanic current and former employees.

39. Defendant engaged in unlawful employment practices based on national origin violation under Title VII by subjecting Plaintiff and the other employees, including the Hispanic/Spanish speaking employees, to unlawful discrimination/hostile work environment based on ethnic characteristics (language, pronunciation, and ethnic traits), including but not limited to near-daily national origin slurs, offensive national origin charged comments, and regular harassment.

40. This national origin harassment/hostile work environment was committed by Defendant's Property Manager and by the white members of their management team (Stephanie Simmons, Iris Friedman, Yekaterina Stoychanova), who's behavior was condoned and rewarded by Defendant.

41. Plaintiff alleges that Defendant's agents unlawful hostile work environment against him included, but is not limited to, subjecting him to a hostile work environment based on national origin and ethnic traits by regularly making lewd and derogatory comments about the Hispanic employees' characteristics, including their accent, prohibiting Spanish speaking employees from speaking Spanish at work, making false accusations and threats against him for being associated with the Hispanic employees, creating unsafe working conditions, among other discriminatory actions.

42. On several occasions, Ms. Kline made comments against Hispanic employees, among them: that she was going to get rid of all the Hispanic employees and that it was not professional to speak Spanish in the workplace.

43. Ms. Kline prohibited the Hispanic employees from speaking Spanish to anyone, including other Spanish speaking employees, vendors, and tenants/prospective tenants. However, the "Leasing Professional" from Russia, was never prohibited from speaking in Russian at the workplace.

44. On or about November, 2011, after a former employee, Victor Calderin, filed an EEOC charge against the Defendant and Ms. Kline, Ms. Kline sent the police to Plaintiff's house falsely alleging that the employee had spoken with Plaintiff on company premises. Plaintiff met Mr. Calderin by chance at a pharmacy close to the property and when she found out that Plaintiff had talked to Mr. Calderin, she threatened Plaintiff and told him she was going to get him arrested.

45. Days after said incident, Plaintiff was contacted by investigator Debbie Singer (hereinafter "Ms. Singer") with the Palm Beach County Office of Equal Opportunity (hereinafter "OEO"). During one of Ms. Singer's calls to him inquiring about Mr. Calderin's discrimination claims, Plaintiff was at Ms. Kline's office and she overheard Ms. Singer asking Plaintiff questions over the phone. When Plaintiff hung up the phone, Ms. Kline threatened him with termination if he cooperated with Ms. Singer's investigation. She directly told him: "I don't want you to say a word to this women or we will get rid of you," "it's your word against mine. Just try to prove it. It's not what you know, it's what you can prove." Just days after Plaintiff was

threatened by Ms. Kline, he was also threatened by Greystar's attorney with regards to Ms. Singer's investigation.

46. After Mr. Calderin filed his discrimination charge against the Defendant and Ms. Kline, Ms. Kline started joking around the property that she hired two (2) Hispanic employees after she fired Mr. Calderin to "CYA." When asked what she meant by "CYA," she stated "cover your ass."

47. The two (2) Hispanic employees that were hired by Defendant after Mr. Calderin was terminated from his employment were hired after he filed his Charge with the OEO complaining about discrimination, harassment, and retaliation against the Defendant.

48. Continually for over a year, Plaintiff was subjected to Ms. Kline's relentless campaign of insults (was called "gringo" all the time), comments about Hispanic's accent, lewd comments about other co-workers on the basis of their skin color and national origin, false accusations and threats, unsafe working conditions, among others.

49. On or about August 24, 2012, Plaintiff was ultimately terminated from his employment with Defendant.

50. The effect of the practices complained of in Paragraphs 37-47 above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee.

51. The unlawful employment practices complained of in Paragraphs 37-47 above were done with malice and/or with reckless indifference to the federally protected rights of Plaintiff.

52. As a result of Defendant's violations of Title VII, Plaintiff has been damaged.

53. WHEREFORE, Plaintiff prays this Court enters an order against Defendant for:

i. lost wages/back pay;

ii. reinstatement or, alternatively, payment of front pay in lieu of reinstatement;

iii. payment for lost benefits, including, medical insurance;

iv. compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trail;

v. punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial;

vi. prejudgment interest;

vii. costs and reasonable attorney's fees pursuant to 42 U.S.C.A. 2000e-5(k);

viii. any other relief that the court deems appropriate.

FOURTH CAUSE OF ACTION

National Origin Retaliation

**(Violation of Title VII of the Civil Rights Act of 1994, as amended, 42 U.S.C. §2000e)**

54. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 8 and 33-49 of this Complaint.

55. Defendant violated Title VII by disciplining, harassing, and terminating Plaintiff's employment, in the manner described above, based on his engaging in the legally protected activity of cooperating with the OEO's investigation of Mr. Calderin's discrimination charge against the Defendant and protesting against the hostile work environment created by Defendant against the Hispanic employees.

56. Plaintiff was directly threatened with retaliation if he cooperated with the OEO's investigation regarding discrimination against Hispanics and as described above on Paragraphs 37-47 he was clearly punished by Defendant for doing so.

57. As a result of Defendant's violations of Title VII, Plaintiff has been damaged.

58. WHEREFORE, Plaintiff prays this Court enters an order against Defendant for:

i. lost wages/back pay;

ii. reinstatement or, alternatively, payment of front pay in lieu of reinstatement;

iii. payment for lost benefits, including, medical insurance;

iv. compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trail;

v. punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial;

vi. prejudgment interest;

vii. costs and reasonable attorney's fees pursuant to 42 U.S.C.A. 2000e-5(k);

viii. any other relief that the court deems appropriate.

## FIFTH CAUSE OF ACTION

### Sexual Harassment

**(Violation of Title VII of the Civil Rights Act of 1994, as amended, 42 U.S.C. §2000e)**

59. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 8 and 32-37 of this Complaint.

60. On August 10, 2012, the newly appointed Regional Property Manager, Max Stamos (hereinafter "Regional Property Manager") weirdly scratched Plaintiff's hand while giving him a handshake. Plaintiff immediately informed his supervisor, Mr. Servando Arzola (hereinafter "Mr. Arzola") about the incident. Mr. Arzola told him that "it was not a big deal, that it was what homosexuals do when they like you."

61. The following Monday, on August 13, 2012, Plaintiff was sexually harassed by Defendant's Regional Property Manager. In particular, while Plaintiff was checking a reported water leak on the ceiling of the model apartment, the Regional Property Manager leaned into Plaintiff from behind pressing his genitals on him.

62. At all times material hereto, Defendant's Regional Property Manager, was acting within the course and scope of his employment with Defendant.

63. Plaintiff was sexually harassed by Defendant's Regional Property Manager.

64. Plaintiff immediately complained of the sexual advances made by the Regional Property Manager towards him and reported the incident right away to his supervisor, Mr. Arzola, Ms. Kline, and Human Resources.

65. Three (3) days after Plaintiff reported the sexual harassment incident, he was instructed to write a brief summary of the incident.

66. Defendant did nothing to protect Plaintiff and correct the situation. To the contrary, just days after Plaintiff submitted the incident summary/report, he was called by Ms. Kline, Human Resources, and another Greystar manager by the name of Jim Fawcett. They informed Plaintiff that he was fired for allegedly submitting a false allegation against Regional Property Manager.

67. The reason offered by Defendant for Plaintiff's termination from employment was not the true factor motivating the termination decision. Plaintiff was in fact terminated from his employment for engaging in statutorily protected activities, including complaining of unlawful sexual harassment, for cooperating with an OEO investigation, and for complaining of discrimination and violations under the FLSA.

68. As a result of Defendant's violations of Title VII, Plaintiff has been damaged.

69. WHEREFORE, Plaintiff prays this Court enters an order against Defendant for:

i. lost wages/back pay;

ii. reinstatement or, alternatively, payment of front pay in lieu of reinstatement;

iii. payment for lost benefits, including, medical insurance;

iv. compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trail;

v. punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial;

vi. prejudgment interest;

vii. costs and reasonable attorney's fees pursuant to 42 U.S.C.A. 2000e-5(k);

viii. any other relief that the court deems appropriate.

<u>SIXTH CAUSE OF ACTION</u>

<u>Sexual Harassment Retaliation</u>

**(Violation of Title VII of the Civil Rights Act of 1994, as amended, 42 U.S.C. §2000e)**

70. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 8, 31-36, and 60-67 of this Complaint.

71. Plaintiff was retaliated and terminated from his employment under false accusations for complaining of sexual harassment against Defendant's Regional Property Manager.

72. As a result of Defendant's violations of Title VII, Plaintiff has been damaged.

73. WHEREFORE, Plaintiff prays this Court enters an order against Defendant for:

i. lost wages/back pay;

ii. reinstatement or, alternatively, payment of front pay in lieu of reinstatement;

iii. payment for lost benefits, including, medical insurance;

iv. compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trail;

v. punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial;

vi. prejudgment interest;

vii. costs and reasonable attorney's fees pursuant to 42 U.S.C.A. 2000e-5(k);

viii. any other relief that the court deems appropriate.

## SEVENTH CAUSE OF ACTION

### Disability Discrimination

**(Violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq.)**

74. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 8 of this Complaint.

75. At all times material hereto, Defendant is a covered employer under ADA.

76. At all times material hereto, Plaintiff was a covered employee of Defendant under ADA.

77. On or about September, 2011, Plaintiff injured his hand, elbow, and neck at work.

78. After the accident, Plaintiff was discriminated, harassed, and retaliated because of his disability and/or regarded as disabled by the Defendant. In particular, Ms. Kline openly joked about Plaintiff's "disability" by telling employees and vendors that Plaintiff was disabled/handicap and that something was wrong with him. Ms. Kline even told Plaintiff's co-workers and a vendor that she had investigated him and that he had had surgery on his back several years ago and that he was "good for nothing."

79. Ms. Kline threatened Plaintiff with termination if he continued requesting reasonable accommodations and worker's compensation benefits for his disability and worker's compensation injury.

80. Further, Ms. Kline told Plaintiff that if he fail to close his worker's compensation benefits claim and follow his doctor's advice to have surgery, she will get rid of him.

81. Ms. Kline also used to yell at Plaintiff about his worker's compensation doctor restrictions/reasonable accommodations requests in front of his co-workers. In particular, Ms. Kline would asked Plaintiff why did he had "that thing [cast] still on" and would yelled to him "I don't care what your doctor says, you are in my property" [with regards to the work restrictions]. She will make Plaintiff performed duties that were under doctor's restriction, which worsen his condition.

82. By the conduct described above, Defendant has engaged in unlawful employment practices against Plaintiff by illegally discriminating against him and by regarding him as disabled/impaired in violation of the ADA.

83. Plaintiff was discriminated against based upon the erroneous assumptions of his superior who perceived him to be disabled and treated him differently based on those erroneous perceptions and attitudes towards him.

84. Defendant's disparaging and disability related comments regarding Plaintiff as disabled affected how Plaintiff was perceived and treated by his superiors and co-workers and the effect of those perceptions affected how Plaintiff was treated the last year of his employment, up to and including his termination from employment.

85. The illegal perception of Plaintiff being disabled caused and/or affected the adverse employment actions taken against him, including: the termination itself.

86. Defendant knowingly and willfully discriminated against Plaintiff in violation of the ADA.

87. As a result of Defendant's violations of ADA, Plaintiff has been damaged. Plaintiff lost his job, his medical insurance, and his reputation, which has caused him humiliation and emotional and physical anguish.

88. WHEREFORE, Plaintiff prays this Court enters an order against Defendant for:

i. lost wages/back pay;

ii. reinstatement or, alternatively, payment of front pay in lieu of reinstatement;

iii. payment for lost benefits, including, medical insurance;

iv. compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and

suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

v. punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial;

vi. prejudgment interest;

vii. costs and reasonable attorney's fees pursuant to 42 U.S.C. § 12205;

viii. any other relief that the court deems appropriate.

## EIGHTH CAUSE OF ACTION

### Disability Retaliation

**(Violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq.)**

89. Plaintiff hereby alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 8 and 74-80 of this Complaint.

90. By the conduct described above, Defendant has engaged in unlawful employment practices and retaliated against Plaintiff by illegally taking adverse employment actions after he complained of violations under the ADA, including, but not limited to: the wrongful disclosure of confidential medical information and his termination from employment, among others.

91. Defendant knowingly and willfully retaliated against Plaintiff in violation of the ADA.

92. As a result of Defendant's violations of ADA, Plaintiff has been damaged. Plaintiff lost his job, his medical insurance, and his reputation, which has caused him humiliation and emotional and physical anguish.

93. WHEREFORE, Plaintiff prays this Court enters an order against Defendant for:

i. lost wages/back pay;

ii. reinstatement or, alternatively, payment of front pay in lieu of reinstatement;

iii. payment for lost benefits, including, medical insurance;

iv. compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

v. punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial;

vi. prejudgment interest;

vii. costs and reasonable attorney's fees pursuant to 42 U.S.C. § 12205;

viii. any other relief that the court deems appropriate.

NINTH CAUSE OF ACTION

Wrongful Disclosure of Confidential Medical Information

**(Violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq.)**

94. Plaintiff hereby alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 8 and 74-80 of this Complaint.

95. By the conduct described above, Defendant has engaged in unlawful employment practices, including, management wrongful disclosure of confidential medical information about Plaintiff's disability/handicap to his co-workers and vendors, including management's statements and actions regarding and treating Plaintiff as disabled.

96. Defendant knowingly and willfully wrongfully disclosed confidential medical information about Plaintiff's medical conditions in violation of the ADA.

97. As a result of Defendant's violations of ADA, Plaintiff has been damaged. Plaintiff lost his job, his medical insurance, and his reputation, which has caused him humiliation and emotional and physical anguish.

98. WHEREFORE, Plaintiff prays this Court enters an order against Defendant for:

i. lost wages/back pay;

ii. reinstatement or, alternatively, payment of front pay in lieu of reinstatement;

iii. payment for lost benefits, including, medical insurance;

iv. compensatory damages for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

v. punitive damages for the malicious and reckless conduct described above, in an amount to be determined at trial;

vi. prejudgment interest;

vii. costs and reasonable attorney's fees pursuant to 42 U.S.C. § 12205;

viii. any other relief that the court deems appropriate.

TENTH CAUSE OF ACTION

Overtime Pay

**(Violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*-As against Defendant Ms. Kline)**

99. Plaintiff alleges and incorporates by reference the allegations set forth in Paragraphs 1 to 7 and 10 to 24 of this Complaint.

100. At all times relevant to this action, Defendant Ms. Kline was the Property Manager at the property in question for the Defendant. As part of her daily duties, Ms. Kline regularly exercised the authority to hire, discipline, and fire employees, determine the work schedules of employees, supervise employees, among others.

101. During 2011-2012, Defendant Ms. Kline supervised Plaintiff and the other maintenance employees. Defendant Ms. Kline had managerial responsibilities and substantial control over the terms and conditions of Plaintiff's work, including the payment for his overtime hours. Therefore, Defendant Ms. Kline is an "employer" and Plaintiff is an "employee" within the meaning of the FLSA.

102. Defendant Ms. Kline did not reasonably believe that her actions or omissions were not in violation of the FLSA.

103. By the actions alleged herein, Defendant Ms. Kline willfully, knowingly, and/or recklessly failed to satisfy the requirements for the payment of all wages for labor and services rendered, in particular the overtime wages for the hours Plaintiff worked in excess of 40 hours per week, even though Plaintiff sent the Defendants a pre-suit demand before filing the captioned Complaint.

104. Because of the unlawful acts of the Defendant Ms. Kline, Plaintiff is entitled to the unpaid overtime compensation owed to him, in an amount to be determined at trial, plus an additional equal amount as liquidated damages, prejudgment interest, attorney's fees, costs, and any other relief the court deems fit.

PRAYER FOR JURY TRIAL

WHEREFORE, Plaintiff prays a trial by jury on all allegations contained herein.

Respectfully submitted, this 14th day of April, 2014.

s/Raquel Fas Bravo

Raquel Fas-Bravo, Esq.
Fla. Bar No. 0040981
The Law Office of Raquel Fas-Bravo
1880 N. Congress Ave. Suite 205
Boynton Beach, FL 33426
Tel: 561-755-2464
Fax: 561-200-5402
raquelfas@fasbravolaw.com

CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served by regular mail and e-mail this day on all counsel of record identified on the attached service list.

s/Raquel Fas Bravo

Raquel Fas Bravo, Esq.

SERVICE LIST

Juan C. Lopez-Campillo
juan.lopez@jacksonlewis.com
Jackson Lewis
390 N. Orange Ave. Suite 1258
Orlando, FL 32801
407-426-8403-Direct
407-246-8441-Fax
Attorneys for the Defendant

Raquel Fas Bravo
raquelfas@fasbravolaw.com
The Law Office of Raquel Fas Bravo
1880 N. Congress Ave. Suite 205
Boynton Beach, Florida 33426
561-755-2464-Direct
561-200-5402-Fax
Attorney for the Plaintiff